UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GAUD, LLC and RAYON BAKER,

                           Plaintiffs,                CIVIL ACTION NO.

         -against-

                                        **COMPLAINT**
PYER MOSS APPAREL GROUP, LLC, and KERBY
JEAN-RAYMOND,

                          Defendants.
-----------------------------------------------------------------X

       Plaintiffs, Gaud, LLC ("Gaud") and Rayon Baker ("Baker") (collectively "Plaintiffs") by their attorneys, Katz Melinger PLLC, complaining of the defendants, Pyer Moss Apparel Group, LLC ("PMAG") and Kerby Jean-Raymond, ("Raymond") (collectively "Defendants"), respectfully allege, upon information and belief as follows:

### I. Nature of Action, Jurisdiction, and Venue

1.     This is an action seeking equitable and legal relief for trademark infringement and false designation of origin of the Trademark Act of 1946, as amended (the Lanham Act, 15 U.S.C. §1050 *et seq.*), trademark infringement under N.Y. GEN. BUS. LAW §360, false designation of origin under Lanham Act 15 U.S.C. §1125(a), unfair business practices under N.Y. GEN. BUS. LAW §349, injury to business reputation, unfair competition under N.Y. GEN. BUS. LAW §360-L, common law trademark infringement and unfair competition, breach of contract, breach of fiduciary duty, unjust enrichment, fraud, conversion, corporate waste, and usurpation of corporate opportunities.

2.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 (federal question), 1338(a) (acts of Congress relating to trademarks), and

1338(b) (pendent unfair competition claims) as well as pursuant to 15 U.S.C. §1121 (original jurisdiction of all actions arising under Lanham Act).

3. This Court has supplemental jurisdiction over the asserted state law and common law claims pursuant to 28 U.S.C. §1367(a), in that the New York state law claims are so closely related to Plaintiffs' federal claims as to form the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct business through its employees, including Plaintiffs, within this judicial district.

## II. Parties

5. At all relevant times, Plaintiff Rayon Baker was, and still is, a resident of the State of New York and a member of Gaud.

6. At all relevant times, Plaintiff Gaud, LLC was, and still is, a Delaware limited liability company with a principal place of business located at 136-20 38th Avenue, Unit 10F, Flushing, New York 11354.

7. At all relevant times, Defendant, Pyer Moss Apparel Group LLC ("Defendant" or "PMAG") was, and still is, a domestic corporation with its principal place of business located at 136-20 38th Avenue, Unit 10F, Flushing, New York 11354.

8. At all relevant times, Defendant Kerby Jean-Raymond ("Jean-Raymond") was, and still is, a member of Gaud and member of PMAG.

<u>Factual Background</u>

9.      In October 2012, Jean-Raymond solicited Baker to invest in Jean-Raymond's fashion company, Gaud.

10.     At the time, Jean-Raymond was unemployed and did not have the financial resources to set up and operate a fashion company on his own.

11.     In order to induce Baker to invest money into Gaud, Jean-Raymond represented to Baker that he had previously worked for established designers, had ready buyers for his clothing line, such as Saks Fifth Avenue and Neiman Marcus, and that Gaud was projected to earn gross revenues of $280,000 in 2013.

12.     As a result of Jean-Raymond's representation, on November 28, 2012, Baker entered into a Company Membership Unit Purchase Agreement ("Purchase Agreement") and a Limited Liability Company Agreement ("LLC Agreement"). (Exhibit "1" and "2")

13.     Under the LLC Agreement, Gaud is the sole owner of all original works of authorship, developments, improvements, designs, discoveries, trademarks, and trade secrets that pertain to the products, services, business and/or technology of Gaud that a member conceives or develops during the member's employment by or provision of service to Gaud.

14.     In exchange for Baker's investment of $25,000 ("Initial Investment"), he was granted a 27.5% membership interest in Gaud.

15.     Baker was appointed manager, vice president and secretary of Gaud.

16.     Jean-Raymond contributed a mere $3,000 capital contribution, but was granted a 72.5% membership interest in Gaud and was appointed manager, president, and treasurer.

3

17. Prior to entering in to the Purchase Agreement and LLC Agreement, Baker and Jean-Raymond discussed and agreed that Baker would provide the Initial Investment but would be unable to be involved in the day-to-day operations of the company because he was often traveling out of state for his work as a financial consultant for another company.

18. Thus, it was agreed that Jean-Raymond would be responsible for the day-to-day operations of the company, as well designer of the clothing produced and manufactured by or on behalf of Gaud.

19. As a manager and majority member of the company, Jean-Raymond owed a duty of loyalty and a fiduciary duty to Baker and Gaud to act in its best interests.

20. On or around December 2012, Jean-Raymond and Baker had discussions about changing the "Gaud" brand name under which the clothing line would be marketed.

21. Subsequently, Jean-Raymond and Baker agreed to officially change the brand name and market Gaud's clothing line under the trademark PYER MOSS (the "PYER MOSS Mark").

22. Baker memorialized the name change on his last installment payment of $5,000 of the Initial Investment which stated: "Investment, Gaud, LLC will undergo a name change (Pyer Moss)." (Exhibit "3")

23. Gaud has, starting at least as early as January 2013, manufactured, produced, marketed, and sold clothing, including menswear jackets, pants, suits, coats, sweatsuits, and chinos, under the PYER MOSS Mark.

24. Since at least as early as January 2013, Gaud has owned, maintained, and developed U.S. common law and equivalent trademark rights in the PYER MOSS Mark for use in conjunction with clothing, including jackets, pants, suits, coats, sweatsuits, and chinos.

25.     The PYER MOSS Mark has been used by Gaud on the Pyer Moss website, and manufactured clothing to be sold in the Atrium clothing store in Soho and Brooklyn, as well as Browns London department store.

26.     In addition to its marketing and promotional activities using the PYER MOSS mark, Gaud and the PYER MOSS Mark have received unsolicited media exposure wherein the PYER MOSS Mark is associated with Gaud.  For example, celebrities Rihanna and Wale, were photographed wearing a camouflage leather jacket designed and manufactured by Gaud and were featured in Vogue and V Magazine.  Other pieces were worn by Chris Brown in his Blank Magazine spread and on J. Cole in his "Power Trip" music video. (Exhibit "4")

27.     Gaud continuously used the PYER MOSS Mark in interstate commerce since at least as early as January 2013, in connection with clothing, including jackets, pants, suits, coats, sweatsuits, and chinos, until July 2013.

28.     Gaud, from January 2013 until July 2013 made bona fide use of the PYER MOSS Mark in the ordinary course of trade.

29.     Although, Gaud is not currently using the PYER MOSS Mark, Gaud has a bona fide intent to use the PYER MOSS Mark in the future in providing and creating clothing items.

30.     Subsequent to Baker's Initial Investment, Jean-Raymond repeatedly requested more funding from Baker to cover the costs of sample production, merchandise, and public relations.

31.     Jean-Raymond was unwilling to personally contribute additional capital to Gaud, yet demanded a larger investment from Baker without any increase in his membership interest.

32.   Nonetheless, Baker relied on Jean-Raymond's assurances that he intended to make decisions in the best interest of Gaud and provide services to further the company's objectives.

33.   Baker contributed an additional $10,000 to the company ("Additional Capital"), which included a $3,090 payment in May 2013 for leather costs.

34.   Subsequent to Baker making the $3,090 payment, Jean-Raymond terminated all communication with Baker.

35.   Unbeknownst to Baker, on February 19, 2013, Jean-Raymond filed a trademark application (U.S. Serial No. 85/853,403) with the United States Patent and Trademark Office for the PYER MOSS Mark in International Class 25 for "Clothing, namely, tops, bottoms, belts, dresses, jackets, coats, scarves, shirts, shorts, pants, pullovers, sweaters, ties, swimwear; headwear, footwear." Jean-Raymond filed the trademark application listing himself as the owner of the application. (Exhibit "5")

36.   In July 2013, Baker was informed that Jean-Raymond ceased all services on behalf, and for the benefit, of Gaud, misappropriated company property, and formed a new entity, PMAG, in direct competition with the company's business and as a successor entity to Gaud.

37.   As of July 2013, Gaud was unable to continue providing clothing under the PYER MOSS Mark due to Jean-Raymond's cessation of all services on behalf, and for the benefit, of Gaud.

38.   Upon information and belief, as early as July 2013, Jean-Raymond adopted and used the trademark "PYER MOSS" in connection with identifying clothing items offered by Jean-Raymond and PMAG.

39. Jean-Raymond and PMAG never received any type of authorization from Gaud or Baker to use the PYER MOSS Mark in connection with clothing items.

40. Upon information and belief, Defendant's unauthorized use of PYER MOSS in connection with clothing products is provided in a manner that is confusingly similar to Gaud's use of the PYER MOSS Mark with clothing products.

41. Defendant's unauthorized use of the PYER MOSS Mark is visually and phonetically identical or substantially similar to Gaud's prior used PYER MOSS Mark.

42. Upon information and belief, the types of goods provided by Gaud using the PYER MOSS Mark are identical to or substantially similar with the types of goods offered and provided by Defendants.

43. Gaud was in the business of creating, designing, manufacturing and selling clothing, and Defendants currently create, manufacture, and sell clothing.

44. Upon information and belief, Gaud's clothing products and Defendants' clothing items, both using the PYER MOSS Mark, are and would be sold in the same channels of trade. For example, substantially all of the clothes that were manufactured by Gaud LLC for Gaud LLC's benefit and use have been utilized by Jean-Raymond for PMAG's benefit, including the camouflage leather jacket that was manufactured and designed for Gaud and was worn by a number of celebrities and fashion icons.

45. Jean-Raymond took advantage of the notoriety that was gained while Gaud used the PYER MOSS Mark for his and PMAG's benefit.

46. Upon information and belief, Jean-Raymond intentionally misappropriated the PYER MOSS Mark from Gaud for his and PMAG's benefit.

47.   Jean-Raymond was fully aware of the terms of the LLC Agreement, that the PYER MOSS Mark was the intellectual property of Gaud, that Gaud was in the business of making and selling clothing items under the PYER MOSS Mark, and that Gaud and Baker detrimentally relied on Jean-Raymond to create and design clothing items under the PYER MOSS Mark for Gaud.

48.   It became evident to Baker that Jean-Raymond provided material misrepresentations and false promises in order to induce Baker to invest in Gaud.

49.   Jean-Raymond did not obtain the approval of Baker before transferring or assigning any of Gaud's property into his new business, including the PYER MOSS Mark.

50.   Jean-Raymond also failed to call for a vote of the members of Gaud, failed to provide fair consideration for corporate assets and failed to deal on an arms-length basis.

51.   According to Section 3.7 of the LLC Agreement, no property of the Company is deemed to be owned by any member individually.

52.   As such, without Baker's explicit approval, Jean-Raymond's use of Gaud's property (PYER MOSS Mark, Pyer Moss designs, inventory, samples, trademarks, etc.) in connection with PMAG is wholly prohibited by the LLC Agreement.

53.   Jean-Raymond's adoption, use, and application for the PYER MOSS Mark without any authorization from Baker or Gaud, including any assignment or license thereof, is in violation of the LLC Agreement.

54.   Jean-Raymond has wrongly assumed and exercised the rights of ownership over the property of Gaud, including the PYER MOSS Mark, to the exclusion of Gaud's lawful ownership.

55.    Upon information and belief, the PYER MOSS Mark is inherently distinctive or has developed definite secondary meaning through extensive use of the PYER MOSS Mark and promotion of Gaud's goods, including clothing.  Gaud has established and developed proprietary common law trademark rights in the PYER MOSS Mark on or in connection with clothing, prior to the July 2013, the date that Jean-Raymond and PMAG adopted and used the PYER MOSS Mark without Gaud's or Baker's authorization.

56.    Gaud used the PYER MOSS Mark as a trademark and trade name. Further, Gaud used the PYER MOSS Mark analogously to trademark use; Gaud used the PYER MOSS Mark to create an association of the term PYER MOSS with Gaud and its goods.

57.    When applied to Gaud's clothing items, Jean-Raymond's and PMAG's unauthorized use of PYER MOSS to identify its clothing is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of PMAG and Jean-Raymond with Gaud as to the origin of the goods, namely clothing, under Section 43(a) of the Lanham Act, as amended 15 U.S.C. §1125(a).

58.    Gaud has not abandoned its common law trademark rights in the PYER MOSS Mark because Jean-Raymond was the sole designer of the company and ran the day-to-day operations of the company.  Baker was not the designer and did not have the ability to run day-to-day operations of the company.

59.    Gaud is not currently using the PYER MOSS Mark solely because of Jean-Raymond's cessation of providing fashion consulting and design services for, and on behalf, of Gaud.

60.    Upon securing additional funding to allow the employment of services of a clothing designer, Gaud has the full intent to commence using the PYER MOSS Mark on clothing items, amongst other items.

61.     Jean-Raymond has been unjustly enriched by his self-dealing, and usurped Gaud's corporate opportunities and took advantage of its assets.

62.     Baker has incurred financial damages as a result of Baker's false representations and deceitful behavior, including, but not limited to, all past and projected future revenues associated with the fashion designs, clothing, merchandise, sales, shows, promotions and related intellectual property.

63.     Gaud has been damaged in the amount of all past and projected future revenues associated with the PYER MOSS Mark and the fair market value of Gaud's property.

## As and for A First Cause of Action By Gaud Against Defendants
*(Breach of Contract)*

64.     Plaintiffs repeat and reallege all prior allegations.

65.     The LLC Agreement between Baker and Jean-Raymond constitute a valid and enforceable contract between the parties.

66.     Pursuant to the LLC Agreement, Baker and Jean-Raymond had obligations which included, but were not limited to:

a)  calling a vote of the members/managers of Gaud, or acquiring sufficient consent from the members/managers of Gaud, prior to transferring all of or substantially all of Gaud's assets. [Section 3.6(d)-(f),6.4, 6.8, 7.4];

b)  utilizing Gaud's" Inventions" for the sole right and benefit of Gaud [6.12(b)];

c)  refraining from establishing, opening, or being engaged in, any business that directly competes with Gaud [6.12 (d)]; and

d)  refraining from soliciting the business of Gaud's customers or former customers [6.12(c)].

67.     Baker has performed all of his obligations under the LLC Agreement.

68. Despite Baker's performance under the terms of the LLC Agreement, Jean-Raymond, by engaging in the acts described in this Complaint, has breached the LLC Agreement.

69. Specifically, Jean-Raymond breached the LLC Agreement by initiating and running a competing business, PMAG, for which he is utilizing Gaud's assets and customers, as well as failing to notify and get consent from Baker prior to transferring all of Gaud's assets to PMAG.

70. Baker has been damaged as a result of Jean-Raymond's breach of the LLC Agreement.

71. Baker is entitled to judgment against Jean-Raymond on the First Cause of Action in an amount to be determined by the Court but in excess of the jurisdictional limits with interest and costs and disbursements.

## As and for A Second Cause of Action by Baker Against Jean-Raymond
### *(Conversion)*

72. Plaintiffs repeat and reallege all prior allegations.

73. Gaud was the owner of all of the goodwill, trademarks, customer lists, vendor lists, business plans, designs and all other assets relating to the "Pyer Moss" clothing designs (the "Gaud Assets").

74. On or about July 2013, Jean-Raymond and PMAG transferred all of the Gaud Assets to PMAG without consent, consideration, or permission of Baker or Gaud.

75. Gaud is entitled to the immediate possession of the Gaud Assets.

76. PMAG and Jean-Raymond have no ownership interest or any other legal interest in the Gaud Assets.

77. Jean-Raymond and PMAG, without authorization, have assumed and exercised the right of ownership of the Gaud Assets to the exclusion of Gaud's ownership rights.

78.  Jean-Raymond and PMAG have deprived, and continues to deprive, Gaud of the use and enjoyment of the Gaud Assets and continues to exploit the Gaud Assets for monetary gain.

79.  Gaud and Baker have demanded that Jean-Raymond and PMAG return the Gaud Assets.

80.  Jean-Raymond and PMAG refused and continues to refuse to return the Gaud Assets to Gaud.

81.  Jean-Raymond and PMAG have acted knowingly, willfully, recklessly, maliciously, outrageously, and with indifference to the rights of Gaud.

82.  Gaud is entitled to judgment against Jean-Raymond and PMAG on the Second Cause of Action in the amount to be determined by the Court but in excess of the jurisdictional limits plus punitive damages, if available, and interest.

<u>**As and for A Third Cause of Action By Plaintiffs against Defendants**</u>
*(Breach of Fiduciary Duty)*

83.  Plaintiffs repeat and reallege all prior allegations.

84.  As members and officers of Gaud, Jean-Raymond and Baker had a fiduciary relationship to one another.

85.  As a manager and majority member of Gaud, Jean-Raymond owed fiduciary duties of care, loyalty and good faith to Baker and Gaud.

86.  Jean-Raymond's fiduciary duties include obligations to exercise good business judgment, to act prudently in the operation of Gaud's business, to discharge his actions in good faith, to act in the best interests of Gaud and its members, and to put the interests of Gaud before his own.

87.  Jean-Raymond breached his fiduciary duty of care by, among other things, failing to comply with the terms of Gaud's governing corporate documents and applicable corporate law and utilizing Gaud's resources to run a competing business.

88.     Jean-Raymond engaged in misconduct which conflicted with Gaud and Baker's interests and raised reasonable questions as to his disinterestedness, independence or business judgment.

89.     As a result, Plaintiffs have been damaged by Jean-Raymond's breach of his fiduciary duties.

90.     Plaintiffs are entitled to judgment against Defendants on the Third Cause of Action in an amount to be determined by this Court but in excess of the jurisdictional limits, with interest, costs and disbursements.

## As and for A Fourth Cause of Action By Plaintiffs against Defendants
### *(Unjust Enrichment)*

91.     Plaintiffs repeat and reallege all prior allegations.

92.     Jean-Raymond and PMAG accepted and received the benefits of Baker's money and services and the Gaud Assets.

93.     Jean-Raymond and PMAG benefited from Baker's money and services and the Gaud Assets.

94.     Jean-Raymond and PMAG failed to adequately compensate Baker and Gaud for the use of Baker's money and services.

95.     As a result of the foregoing, Jean-Raymond and PMAG has been unjustly enriched at Baker and Gaud's expense.

96.     It would be inequitable and unconscionable to permit Jean-Raymond and PMAG to retain the value of the use of Baker's money and service and the Gaud Assets without making full remuneration to Baker and Gaud.

97.     Equity demands that Jean-Raymond and PMAG be compelled to pay for this benefit.

98. Plaintiffs are entitled to judgment against Defendants on the Fourth Cause of Action in an amount to be determined by this Court but in excess of the jurisdictional limits, with interest, costs and disbursements.

## As and for A Fifth Cause of Action By Plaintiffs against Defendants
### *(Usurpation of Corporate Opportunities)*

99. Plaintiffs repeat and reallege all prior allegations.

100. Jean-Raymond is a manager and majority member of Gaud.

101. Jean-Raymond knowingly, willfully and intentionally misappropriated a business opportunity that properly belonged to Gaud, namely the opportunity to enter into the business that has become PMAG (the "Opportunity").

102. Gaud has a legitimate interest and expectancy in the misappropriated Opportunity. Indeed, the Opportunity is essential to Gaud.

103. The Opportunity is in the line of Gaud's business and is of practical advantage to it.

104. Gaud had the financial resources to take advantage of the misappropriated Opportunity.

105. Despite being aware that such opportunities would belong to Gaud, Jean-Raymond never disclosed the Opportunity to Gaud.

106. Jean-Raymond utilized Gaud's corporate resources to exploit the Opportunity.

107. By embracing the Opportunity, Jean-Raymond's interests conflict with those of Gaud's.

108. As a result of his tortious usurpation of the Opportunity, Jean-Raymond has reaped financial benefits.

109. As a result of Jean-Raymond's usurpation of these business opportunities, Gaud has suffered commercial damages in the form of lost sales, revenues and profits.

110. Jean-Raymond performed these actions willfully, intentionally and with malice, warranting the imposition of exemplary damages.

111. Plaintiffs are entitled to judgment against Defendants on the Fifth Cause of Action in an amount to be determined by this Court but in excess of the jurisdictional limits, with interest, costs and disbursements.

### As and for A Sixth Cause of Action By Plaintiffs against Defendants
*(Fraud)*

112. Plaintiffs repeat and reallege all prior allegations.

113. Jean-Raymond made material misrepresentations to Plaintiffs regarding the purpose for which he was requesting capital from Baker and using Gaud's financial resources and assets. This included misrepresentations that Jean-Raymond had buyers lined up and that Gaud was projected to earn over $200,000 in gross revenues in the first year.

114. Jean-Raymond assured Baker that he intended to make decisions in the best interest of Gaud and provide services to further the company's objectives.

115. Jean-Raymond's representations were false and known to be false by him, and in fact Jean-Raymond had no intention of keeping his word or fulfilling his obligations.

116. Instead, Jean-Raymond made these representations with the intention of utilizing Baker's monetary contributions and the Gaud Assets to start a competing business.

117. Jean-Raymond's misrepresentations and omissions were made to induce Baker to rely upon it and make additional monetary investments to Gaud.

118. Baker justifiably relied on Jean-Raymond's misrepresentations regarding his services, timelines, industry contacts, and assurances of projected earnings.

119.    Because of such representations, Baker financially contributed to the company multiple times to his detriment, in excess of his contractual obligations and what his personal finances permitted.

120.    As a result of Jean-Raymond's fraudulent actions, Plaintiffs have suffered damages including, but not limited to, Baker's monetary contributions, lost sales, revenues and profits.

121.    Plaintiffs are entitled to judgment against Defendants on the Sixth Cause of Action in an amount to be determined by this Court but in excess of the jurisdictional limits, with interest, costs and disbursements.

**As and for A Seventh Cause of Action By Plaintiffs against Defendants**
*(Corporate Waste)*

122.    Plaintiffs repeat and reallege all prior allegations.

123.    Jean-Raymond owed and owes to Gaud an obligation to protect the Gaud Assets from loss or waste.

124.    As set forth above, by any objective assessment, the transfer of the Gaud Assets to PMAG is supported by no consideration at all or was for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to make.

125.    By transferring the Gaud Assets to PMAG for illusory or non-existent consideration, Jean-Raymond irrationally committed a waste of the Gaud Assets.

126.    No reasonable person could conclude that Jean-Raymond's decision to approve this transfer represented a fair or reasonable exchange.

127.    Jean-Raymond's actions were unconscionable and were done in bad faith.

128.    Gaud has sustained, and will continue to sustain, serious damage and irreparable injury for which relief is sought herein.

16

129.   Plaintiffs are entitled to judgment against Defendants on the Seventh Cause of Action in an amount to be determined by this Court but in excess of the jurisdictional limits, with interest, costs and disbursements.

**As and for An Eighth Cause of Action By Plaintiffs against Defendants**
*(False Designation of Origin under 15 U.S.C. §1125(A))*

130.   Plaintiffs repeat and reallege all prior allegations.

131.   Gaud is the exclusive owner of the PYER MOSS Mark.

132.   Gaud's PYER MOSS Mark is inherently distinctive and has been used in commerce with clothing.

133.   Upon information and belief, Defendants' actions as alleged in connection with the use of the mark PYER MOSS with Defendants' clothing products is intended to, and is likely to cause confusion, mistake or deception as to the source of origin of Gaud's clothing products.  Defendants' use of PYER MOSS as a trademark is identical to Gaud's prior use of the PYER MOSS Mark.

134.   Due to the highly similar nature of the marks and the goods offered under those marks, the trade and others are likely to believe that Defendants' clothing products offered under the mark PYER MOSS are the same as Gaud's clothing products, or are authorized, sponsored, or approved by Gaud, or are otherwise affiliated or connected with Gaud and their valuable trademarks, including the PYER MOSS Mark.

135.   Defendants' unauthorized and willful use in commerce of PYER MOSS with goods that are competitive and similar to or identical with the goods that were offered in commerce by Gaud using the PYER MOSS Mark is likely to cause confusion, mistake or deception with PYER MOSS Mark and constitutes trademark infringement, false designation of origin, false representation, and false description in violation of the Lanham Act, Section

43(a), 15 U.S.C. §1125(a), all to the substantial and irreparable injury of the public and of Gaud's business reputation and goodwill.

136.    Upon information and belief, Defendants' infringing activities have caused and, unless enjoined by this Court, will continue to cause, irreparable harm and injury to Plaintiffs, and to Plaintiffs' reputation and good will in Plaintiffs' Marks. Defendants continue to use the PYER MOSS Mark without the express authorization of Plaintiffs. Plaintiffs have no adequate remedy at law.

### As and for A Ninth Cause of Action By Plaintiffs against Defendants
*(Unfair Business Practices Under N.Y. GEN. BUS. LAW §349)*

137.    Plaintiffs repeat and reallege all prior allegations.

138.    Defendants' use of PYER MOSS to promote, market, or sell products and/or services, including Defendants' clothing, constitutes a deceptive act or practice in the conduct of Defendants' business, trade, or commerce, and in the furnishing of services to consumers and therefore a violation of N.Y. Gen. Bus. Law §349, *et seq.*

139.    Defendants, through its content and conduct, are causing a likelihood of confusion as to the source sponsorship, affiliation, connection, association, or approval of Defendants by or with Plaintiffs.

140.    Plaintiffs have been damaged by Defendants' acts complained of in an amount to be determined at trial, and if Defendants' conduct is allowed to continue, Plaintiffs and their associated goodwill and reputation will continue to suffer immediate, substantial, and irreparable injury that cannot be adequately calculated and compensated in monetary damages.

141.    Defendants' materially misleading practice of using PYER MOSS to identify goods and/or services provided by Defendants are likely to cause the consuming public at large to be

18

misled as to the true source, sponsorship, or affiliation of the goods and services offered by Defendants and is likely to cause confusion or mistake or to deceive.

142. Plaintiffs are entitled to monetary damages in an amount to be proven at trial and injunctive relief prohibiting Defendants from using PYER MOSS or any other trade name, trademark, service mark, or domain name that is likely to be confused with the PYER MOSS Mark or otherwise unfairly competing with Plaintiffs. Without preliminary and permanent injunctive relief, Plaintiffs have no means by which to control the continuing injury to the reputation and goodwill associated with the PYER MOSS Mark. No amount of monetary damages can adequately compensate Plaintiffs if it suffers damage to its reputation and associated goodwill through the false and unauthorized use by Defendants of the PYER MOSS mark.

**As and for A Tenth Cause of Action By Plaintiffs against Defendants**
*(Injury To Business Reputation And Unfair Competition Under N.Y. Gen. Bus. §360-L)*

143. Plaintiffs repeat and reallege all prior allegations.

144. By making unauthorized use in commerce of substantially all of Plaintiffs' PYER MOSS Mark on similar or identical goods and services, Defendants' unauthorized use of PYER MOSS to identify Defendants' goods and services is likely to cause confusion, mistake, or deception as to the affiliation or connection of Defendants with Plaintiffs and as to the sponsorship or approval of Defendants' goods or services by Plaintiffs.

145. Defendants distributing, marketing, advertising, offering for sale and selling of its goods and services under the PYER MOSS trademark causes confusion and mistake, deceives and misleads the purchasing public, trades upon Plaintiffs' high quality reputation, and improperly appropriates to Defendants the valuable goodwill of Plaintiffs.

146.    The aforesaid conduct by Defendants constitutes a likelihood of injury to the business reputation of Plaintiffs in violation of N.Y. Gen. Bus. Law. §360-l.

147.    Plaintiffs have been damaged by Defendants' acts complained of in an amount to be determined at trial, and if Defendants' conduct is allowed to continue and is not enjoined, Plaintiffs and his goodwill and reputation will continue to suffer immediate, substantial, ongoing and irreparable injury that cannot be adequately calculated and compensated in monetary damages.

### As and for An Eleventh Cause of Action By Plaintiffs against Defendants
*(Common Law Trademark Infringement And Unfair Competition)*

148.    Plaintiffs repeat and reallege all prior allegations.

149.    Plaintiffs own and use the PYER MOSS Mark and enjoy common law rights in the State of New York and throughout the United States. Defendants' activities as stated herein constitute unfair competition and trademark infringement of Plaintiffs' common law trademark rights in the PYER MOSS Mark within the State of New York and in violation of New York law.

150.    Defendants' conduct alleged herein is causing immediate and irreparable harm and injury to Plaintiffs, and to their good will and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this Court. Plaintiffs have no adequate remedy at law.

151.    Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, and if applicable, reasonable attorneys' fees.

**As and for A Twelfth Cause of Action By Plaintiffs against Jean-Raymond**
*(Fraud by Jean-Raymond on the United States Patent and Trademark Office)*

152.   Plaintiffs repeat and reallege all prior allegations.

153.   Jean-Raymond committed fraud on the United States Patent and Trademark Office by filing the Trademark Application while knowing that Gaud was and is the rightful owner of the PYER MOSS Mark pursuant to the LLC Agreement.

154.   On February 19, 2013, Jean-Raymond purposefully and willfully filed a trademark application (U.S. Serial No. 85/853,403) with the United States Patent and Trademark Office for the PYER MOSS Mark in International Class 25 for "Clothing, namely, tops, bottoms, belts, dresses, jackets, coats, scarves, shirts, shorts, pants, pullovers, sweaters, ties, swimwear, headwear, footwear." (the "Trademark Application").

155.   Jean-Raymond, in the Trademark Application, listed himself as the owner of the application. The Trademark Application still only lists Jean-Raymond as the owner of the Trademark Application.

156.   At the time of the Trademark Application, Jean-Raymond knew that in accordance with the LLC Agreement, Gaud was the rightful owner of the PYER MOSS Mark.

157.   Jean-Raymond, when submitting the Trademark Application, signed the federal declaration within the trademark application, which stated "The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section

1051(b), he/she believes applicant to be entitled to use such mark in commerce; *to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.*" (emphasis added).

158.   Jean-Raymond knowingly made a false representation to the United States Patent and Trademark Office when submitting the Trademark Application. Jean-Raymond knew at the time of filing the Trademark Application that he did not own any rights to the PYER MOSS Mark and that the PYER MOSS Mark was the exclusive property of Gaud in accordance with the LLC Agreement.

159.   Jean-Raymond, knowingly and with deceptive intent, listed himself as the exclusive owner of trademark rights in the PYER MOSS Mark in the Trademark Application.  However, Jean-Raymond knew at the time of filing the Trademark Application that Jean-Raymond did not own any rights to the PYER MOSS Mark and, in fact, knew that Gaud was the owner of the PYER MOSS Mark in accordance with the LLC Agreement.

160.   Jean-Raymond listed himself as the owner of the Trademark Application with the intent to deceive the United States Patent and Trademark Office in an attempt to secure a trademark registration under 15 U.S.C. §1051(b).  Jean-Raymond knew that, at the time of filing the Trademark Application, Gaud had the right to use the PYER MOSS Mark in commerce, and that Jean-Raymond's Trademark Application for the PYER MOSS Mark when used on or in connection with the goods provided by Gaud, would cause confusion, or cause

mistake, or deceive the public, in contradiction to the requirements of 15 U.S.C. §1051(b)(3)(D).

161. Jean-Raymond knowingly and with deceptive intent made a false representation to the United States Patent and Trademark Office which the USPTO would reasonably rely on due to Jean-Raymond's signing of the federal declaration in the Trademark Application. Jean-Raymond represented himself as the "owner" of the PYER MOSS Mark in the Trademark Application with intent to deceive the Examining Attorney and United States Patent and Trademark Office that there were no other owners of the PYER MOSS Mark.

162. Pursuant to the federal declaration signed by Jean-Raymond when filing the Trademark Application, Jean-Raymond knowingly made a false representations with the intent to deceive the United States Patent and Trademark Office.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants as follows:

    a) on the First Cause of Action in an amount no less than $100,000.00, plus punitive damages, if available, and interest, and

    b) on the Second Cause of Action in an amount no less than  $100,000.00, plus punitive damages, if available, and interest, and

    c) on the Third Cause of Action in an amount no less than $100,000.00, plus reasonable attorneys' fees, if available, and interest, and

    d) on the Fourth Cause of Action in an amount no less than $100,000.00, with interest, and

    e) on the Fifth Cause of Action in an amount no less than $100,000.00, with interest, and

f)   on the Sixth Cause of Action in an amount no less than $100,000.00, with interest, and

g)   on the Seventh Cause of Action in an amount no less than $100,000.00, with interest, and

h)   on the Eighth Cause of Action in an amount no less than $100,000.00, with interest, and

i)   on the Ninth Cause of Action in an amount no less than $100,000.00, with interest, and

j)   on the Tenth Cause of Action in an amount no less than $100,000.00, with interest, and

k)   on the Eleventh Cause of Action in an amount no less than $100,000.00, with interest, and

l)   on the Twelfth Cause of Action, require the immediate abandonment of U.S. Trademark Application Serial Number 85/853,403, and

m)   order an award in an amount to be determined at trial of any actual damages and all profits and damages to Plaintiffs pursuant to Defendants' infringement of the PYER MOSS Mark, and

n)   the costs and disbursements of this action, and

o)  such other and further relief as may be just and proper under the circumstances.


Dated:  New York, New York
        December 10, 2015

<u>s/ Kenneth J. Katz</u>
Kenneth J. Katz
Attorney for Plaintiffs
Katz Melinger PLLC
280 Madison Avenue, Suite 600
New York, New York 10016
212.460.0047
kjkatz@katzmelinger.com